CENTRAL PRINCIPAL DWELLING BOARD OF the MINISTRY OF DEFENSE OF the RUSSIAN FEDERATION, Plaintiff,

v.

**NEW HAMPSHIRE INSURANCE COMPANY, Defendant.**

**No. 95 Civ. 4551 (MGC).**

United States District Court, S.D. New York.

Nov. 10, 1995.

Milbank, Tweed, Hadley & McCloy by Russell E. Brooks, David Wolfson, New York City, for Plaintiff.

Cahill Gordon & Reindel by Thorn Rosenthal, Daniel L. Cantor, New York City, for Defendant.

## OPINION

CEDARBAUM, District Judge.

This is a suit by an agency of the Russian Federation against an American insurance company on a contract governed by German law. The American insurance company argues that Finland is a more convenient forum and moves to dismiss the complaint on the ground of forum non conveniens. None of the relevant documents is in the Finnish language. None of the applicable law is Finnish. The insurance company maintains its principal place of business in New York. For the reasons that follow, the motion is denied.

### Facts

Central Principal Dwelling Board of the Ministry of Defense of the Russian Federation ("Ministry of Defense") sues on three guarantees issued to Arge Benoba Wohnungsbau, an international joint venture, for the benefit of the United Armed Forces of the Commonwealth of Independent States. The guarantees were issued by the Finnish branch office of New Hampshire Insurance Company, a Pennsylvania corporation with its principal place of business in New York. (Answer ¶ 5.) The guarantees were issued in connection with an agreement between Arge Benoba and the United Armed Forces for the construction of a housing project in Belarus. That agreement is governed by Russian law. Under the guarantees, New Hampshire "irrevocably and independently guarantee[d]" to pay the United Armed Forces upon its first written request for payment and its written declaration that Arge Benoba had failed to fulfill the agreement. The guarantees are written in German and governed by German law.

In March of 1994, the Finnish member of Arge Benoba filed for bankruptcy in Finland. The complaint alleges that following the bankruptcy, "all activities related to the construction ... ceased." (Complaint ¶ 24.)

In March and July of 1994, Ministry of Defense informed New Hampshire by letter that Arge Benoba had failed to meet its obligations under the agreement, and requested payment in compliance with the guarantees. According to Ministry of Defense, it is the legal successor to the United Armed Forces. (Complaint ¶ 4.) New Hampshire has not made the requested payments.

### Discussion

■ To prevail on a motion to dismiss based on forum non conveniens, the moving party must demonstrate first that an adequate alternative forum for deciding the dispute exists. An alternative forum where the defendant is subject to jurisdiction is adequate except in "rare circumstances." *Blanco v. Banco Industrial de Venezuela, S.A.,* 997 F.2d 974, 981 (2d Cir.1993) (quoting *Piper Aircraft Co. v. Reyno,* 454 U.S. 235, 254 n. 22, 102 S.Ct. 252, 264 n. 22, 70 L.Ed.2d 419 (1981)). New Hampshire argues that Finland is an adequate alternative forum for resolution of this case; Ministry of Defense does not challenge that contention.

■ Second, the defendant must prove that "the balance of convenience tilts strongly in favor of trial in the foreign forum." *R. Maganlal & Co. v. M.G. Chem. Co.,* 942 F.2d 164, 167 (2d Cir.1991). Generally, courts apply a "strong presumption in favor of plaintiff's choice of forum," although a foreign plaintiff's choice of forum is entitled to less deference than would be the choice of an American plaintiff. *See id.* at 167–68 (citing *Piper,* 454 U.S. at 255–56, 102 S.Ct. at 265–66). "However, this reduced weight is not an invitation to accord a foreign plaintiff's selection of an American forum *no* deference since dismissal for forum non conveniens is the exception rather than the rule." *See id.* at 168 (citations and internal quotation marks omitted).

In *Gulf Oil Corp. v. Gilbert,* 330 U.S. 501, 67 S.Ct. 839, 91 L.Ed. 1055 (1947), the Supreme Court enumerated the private interest and public interest factors that courts are to consider in applying the doctrine of forum non conveniens. The private interests set forth in *Gilbert* are:

the relative ease of access to sources of proof; availability of compulsory process for attendance of unwilling, and the cost of obtaining attendance of willing, witnesses; possibility of view of premises, if view would be appropriate to the action; and all other practical problems that make trial of a case easy, expeditious and inexpensive.

*Id.* at 508, 67 S.Ct. at 842. Courts are also to consider questions related to the enforceability of a possible judgment. *See id.* The public interest factors include "administrative difficulties flowing from court congestion; ... imposing jury duty on citizens of the forum; ... the local interest in having controversies decided at home; and ... the avoidance of unnecessary problems in the application of foreign law." *See Allstate Life Ins. Co. v. Linter Group Ltd.,* 994 F.2d 996, 1001 (2d Cir.) (citing *Gilbert*), *cert. denied,* —— U.S. ——, 114 S.Ct. 386, 126 L.Ed.2d 334 (1993); *see also Piper,* 454 U.S. at 241 n. 6, 102 S.Ct. at 258 n. 6.

■ The private interest *Gilbert* factors do not favor dismissal. The principal issues in this case are questions of law; namely, the legal relationship between Ministry of Defense and the United Armed Forces, and the proper construction and legal significance of the guarantees under German law. The first requires evidence from Russia, the Commonwealth of Independent States, and experts on their governments. Resolution of the second rests upon the guarantees themselves, all of which are written in German and none of which is written in Finnish. Those documents have been brought to New York and translated into English. Expert witnesses on German law, Russian law, and the law of the Commonwealth of Independent States are located in New York or can travel here without substantial inconvenience.

New Hampshire asserts that foreign witnesses will be necessary for its defense that construction of the project has continued and for its defense on damages. New Hampshire also argues that its defense that the guarantees are void for fraud or illegality requires the testimony of numerous fact witnesses who are located in European countries. New Hampshire has not demonstrated that any of

these witnesses would be unable or unwilling to attend proceedings in New York, or that most of the important witnesses are subject to subpoena by a court in Finland.

Viewing the construction site in Belarus would be inconvenient for either a Finnish court or this Court. But viewing the premises would not assist in resolving the important legal issues in this case. Moreover, only the state of construction at the time of demand, not at the time of trial, could have any bearing on whether New Hampshire was required to pay on the guarantees when Ministry of Defense requested payment in 1994.

█ New Hampshire argues that trying this case here would be inconvenient because there are proceedings pending in Finland in which the same issues may be decided. One of those proceedings, the adjudication of a contingent claim by Ministry of Defense against the estate of the bankrupt member of Arge Benoba, will not require the Finnish district court to adjudicate the merits of this case. That is, that court will not determine whether Ministry of Defense has a right to payment under the guarantees. The Finnish court has noted that a decision on the bankruptcy claim would "have no legal effect beyond the bankruptcy proceedings." Judgment of Helsinki District Court, Brooks Supp.Aff.Ex. A at 7. In addition, that proceeding has been stayed pending a decision by this Court. The other proceeding, an action by New Hampshire for a declaratory judgment against Ministry of Defense, was brought nearly two months after Ministry of Defense filed the complaint in this action and two days before New Hampshire filed its motion to dismiss. I am not persuaded that the existence of these foreign proceedings presents any "practical problem" in trying this case in New York, or that proceeding here would result in a great waste of resources.

There is no dispute that a judgment against New Hampshire could be enforced in New York. Ministry of Defense asserts that New Hampshire lacks assets in Finland sufficient to satisfy a judgment there, and that if it prevailed in an action in Finland, it would be required to bring a second proceeding against New Hampshire in the United States

to enforce the judgment. Thus the fifth *Gilbert* factor tilts in favor of permitting this action to proceed.

█ None of the public interest *Gilbert* factors favors dismissal. The calendar of this court may be "congested," but the "temptation in a busy district like the Southern District of New York to transfer cases . . . must be resisted." *See Manu Int'l, S.A. v. Avon Products, Inc.,* 641 F.2d 62, 65 (2d Cir.1981) (citation and internal quotation marks omitted). New York citizens have an interest in this case because New Hampshire maintains its principal place of business here and may satisfy a possible judgment with funds located here, and because in a modern world characterized by a global economy, New Yorkers have a general interest in the economic and political conditions of the former Soviet Republics.

This case will require the application of foreign law. "But the need to apply foreign law is not in itself a reason to apply the doctrine of forum non conveniens, and we must guard against an excessive reluctance to undertake the task of deciding foreign law, a chore federal courts must often perform." *See id.,* at 67–68 (citations and internal quotation marks omitted). Furthermore, because the issues are governed primarily by German law and Russian law or the law of the Commonwealth of Independent States, dismissal will not avoid the need for the court that hears this case to apply foreign law.

Ministry of Defense has selected the forum in which New Hampshire maintains its principal place of business. When a plaintiff chooses a defendant's home forum, "[t]his weighs heavily against dismissal." *See Schertenleib v. Traum,* 589 F.2d 1156, 1164 (2d Cir.1978) (affirming district court's dismissal on ground of forum non conveniens in "this rare case"); *see also Manu,* 641 F.2d at 67 (quoting *Schertenleib* ). In the cases cited by defendant in which plaintiffs sued defendants in their home forums and motions to dismiss on the ground of forum non conveniens were granted, the relevant factors converged in the alternative forum to create a single center of gravity. *See, e.g., Schertenleib* (events took place in Switzerland, plain-

tiff and his alleged co-conspirator were incarcerated in Switzerland, all witnesses except defendant resided in Switzerland or other European countries, most documents were located in Switzerland and were in the French language, and Swiss law governed); *In re Union Carbide Corp. Gas Plant Disaster,* 809 F.2d 195 (2d Cir.) (relevant events occurred in India, witnesses and sources of proof were almost entirely located in India, witnesses for the most part spoke Indian languages but not English, records were almost entirely in Indian languages, and Indian law governed claims), *cert. denied,* 484 U.S. 871, 108 S.Ct. 199, 98 L.Ed.2d 150 (1987); *Fassi v. LJN Toys, Ltd.,* 753 F.Supp. 486 (S.D.N.Y.1990) (events occurred mainly in Italy, key witnesses resided in Italy or were available for trial in Italy, much of the relevant documentary evidence was located in Italy and was in the Italian language, and claims were governed by Italian law), *aff'd,* 948 F.2d 1276 (2d Cir.1991); *Fustok v. Banque Populaire Suisse,* 546 F.Supp. 506 (S.D.N.Y.1982) (alleged illegal acts occurred in Switzerland, Switzerland was central location of all material witnesses, relevant documents were located in Switzerland, and an action pending in Switzerland encompassed plaintiff's claims). Moreover, for the most part, the alternative forum in those cases was the home forum of the plaintiffs, unlike the alternative forum in this case. *See Schertenleib; Union Carbide,* at 202 ("[A]ll but a few of the 200,000 plaintiffs are Indian citizens located in India...."); *Fassi.*

Finland does not represent a comparable center of gravity in this case. The relevant documents are written in German, not Finnish. German law applies, not Finnish. The parties are Russian and American, not Finnish. The succession of Ministry of Defense to the rights of the United Armed Forces, the construction of the housing project, and the alleged bribery of Russian generals underlying New Hampshire's claim of fraud all took place outside of Finland. Many potential witnesses are located in countries other than Finland. In light of these facts, it cannot be said that the relevant factors strongly favor trial in Finland.

*Conclusion*

New Hampshire has not made the required showing that upon consideration of the *Gilbert* factors, the balance of convenience tilts strongly in favor of dismissal. Accordingly, the motion to dismiss is denied.

*Motion to Disqualify*

Three days before the return date of this motion, New Hampshire moved to disqualify Jan Kuhlefelt as an expert witness and to strike his affidavit filed in opposition to New Hampshire's motion to dismiss. I have not relied on Kuhlefelt's affidavit in deciding the motion to dismiss.

SO ORDERED.